IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:25-CV-878-BO-KS

| | |
|---|---|
| LORI S. BROWN, on behalf of herself and as the Executor of the Estate of Kurt O. Svendsen,<br><br>   Plaintiff,<br><br>v.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA, INC., a Pennsylvania corporation; and<br><br>OMEGA WORLD TRAVEL, INC., a Virginia corporation;<br><br>   Defendants. | O R D E R |

This matter comes before the Court on defendants' motions to dismiss [DE 16], [DE 18]. Defendant Life Insurance Company of North America, Inc. (LINA) removed this case from the North Carolina Superior Court in Onslow County on May 15, 2025. Defendant Omega World Travel, Inc. (Omega) moved to dismiss [DE 12] on May 27, 2025. Plaintiff filed an amended complaint [DE 14] on June 17, 2025. On July 1, 2025, LINA moved to dismiss the state law claims asserted against it. [DE 16]. Also on July 1, 2025, Omega moved to dismiss all claims asserted against it. [DE 18]. A hearing was held before the undersigned on November 10, 2025. In this posture, the motions are ripe for ruling. For the following reasons, the motions are granted.

## BACKGROUND

Around November 1, 2017, defendant LINA issued a group policy of life insurance to Omega. [DE 14, ¶ 17]. Omega administered the plan for the benefit of its employees. *Id.* at ¶ 19.

The "Basic Life" portion of the policy automatically enrolled eligible employees for $15,000 in life insurance benefits. *Id.* at ¶ 21. Additionally, under the "Voluntary Life Insurance" portion of the policy, employees could elect to enroll in additional coverage. *Id.* at ¶ 22. The employees would pay individual premiums to Omega as administrator, or Omega would deduct the premiums from their compensation, and Omega would transmit the premiums to LINA, the carrier. *Id.* at ¶¶ 23–24. Kurt Svendsen, an employee of Omega, was enrolled in the Basic Life plan whereby he was covered for $15,000. *Id.* at ¶ 32. Svendsen elected to participate in the Voluntary Life Insurance plan for an additional $150,000 of coverage. *Id.* Altogether, Svendsen's total life insurance coverage under the policy was $165,000. *Id.* at ¶ 33.

The policy's terms state that termination of the policy begins a thirty-one day "conversion period" during which an insured individual may apply for continued coverage. *Id.* at ¶ 25. Under the policy, "[i]f the Insured dies during the 31-day conversion period, the Life Insurance benefits will be paid under the Policy regardless of whether he or she applied for conversion insurance." *Id.* at 26. The policy terminated on November 1, 2023, when Omega changed to a different life insurance carrier. *Id.* at ¶ 36. Svendsen died November 28, 2023, within the conversion period. *Id.* at ¶ 37.

Plaintiff Lori Brown is the beneficiary of Svendsen's policy and is the executor of his estate. *Id.* at ¶¶ 3–5. She made claim to the insurance company for the benefits due under the policy on January 10, 2024, which claim was denied on the basis that the policy had terminated on November 1, 2023. *Id.* at ¶¶ 39–40. She appealed the claim on February 29, 2024, and her appeal was denied. *Id.* at ¶ 42. She renewed her appeal, and LINA acknowledged that Mr. Svendsen was covered under the policy but determined the benefit was limited to $10,000. *Id.* at ¶¶ 44–46.

2

The amended complaint suggests there "is no language in the Policy supporting the Insurance Company's determination that coverage during the thirty-one (31) day conversion period" was limited to ten thousand dollars. [DE 13, ¶ 48]. The Court speculates that this amount of coverage may be derived from the following provision of the policy, which concerns the conversion period:

> The Insured may apply for any type of life insurance the Insurance Company offers to persons of the same age in the amount applied for, except the Insured may not . . . apply for more than $10,000 of insurance if the Policy is terminated or amended to terminate the insurance for any class of Insureds, or the Employer cancels participation under the Policy. Conversion in these cases is only permitted if the Insured has been covered by the Policy or, any group life insurance policy issued to the Employer which the Policy replaced, for at least 3 years.

[DE 1-5, p. 26].

Plaintiff Brown now asserts claims against LINA for (1) denial of benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B) and (2) violation of N.C.G.S. § 58-63-15 regarding unfair and deceptive insurance practices. Plaintiff asserts claims against Omega for (1) breach of fiduciary duty under ERISA, 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3); (2) state common law negligence, (3) state common law negligent misrepresentation, and (4) state common law breach of contract. Plaintiff seeks to recover the $155,000 dollars unpaid—that is, the full policy amount minus the $10,000 LINA already paid.

## STANDARD

A 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the complaint's legal and factual sufficiency. See Fed. R. Civ. P. 12(b)(6). The focus is on the pleading requirements under the Federal Rules, not the proof needed to succeed on a claim. "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what

the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard does not require detailed factual allegations, *ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*, 917 F.3d 206, 212 (4th Cir. 2019), but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). For a claim to be plausible, its factual content must allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

## ANALYSIS

Plaintiff asserts claims based on ERISA, and both defendants assert defenses based on ERISA preemption. Therefore, the Court first considers whether the plan at issue qualifies as an employee welfare benefit plan under ERISA.

> ERISA governs all employee benefit plans established or maintained by any employer engaged in interstate commerce. See 29 U.S.C. § 1003(a)(1). An employee benefit plan includes an employee welfare benefit plan. See id. § 1002(3). An employee welfare benefit plan is a plan, fund, or program that provides, among other things, death benefits to participants and beneficiaries through the purchase of insurance or otherwise. See id. § 1002(1).

*Allen v. MetLife*, 2022 U.S. Dist. LEXIS 4531, *8. The parties appear to agree that ERISA applies to the group policy at issue in this case. See [DE 14, ¶ 14]; [DE 19]. ERISA governs this action.

### I. Omega's Motion to Dismiss All Claims

Plaintiff asserts a breach of fiduciary duty claim against Omega based on ERISA. Omega argues that although its group policy is ERISA governed and the pleadings assert Omega administers the policy, Omega is not a fiduciary under ERISA. Plaintiff also asserts state law claims against Omega for negligence, negligent misrepresentation, and breach of contract.

4

*a. Breach of Fiduciary Duty Under ERISA*

"Before one can conclude that a fiduciary duty has been violated, it must be established that the party charged with the breach meets the statutory definition of 'fiduciary.'" *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 60 (4th Cir. 1992), *as amended* (July 17, 1992).

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002. When an employer acts as both an ERISA plan sponsor and a plan administrator, it is a fiduciary only with respect to its acts taken in its capacity as a plan administrator. *Beck v. PACE Int'l Union*, 551 U.S. 96, 101 (2007).

In *Moon v. BWX Techs., Inc.*, the plaintiff's estate asserted a breach of fiduciary duty claim against his employer, alleging the employer had continued to accept monthly payments without informing the plaintiff he was ineligible for life insurance benefits. 956 F. Supp. 2d 711, 718 (W.D. Va. 2013). The district court dismissed the fiduciary duty claim because the plaintiff "failed to establish Defendants' fiduciary status with respect to the particular activities at issue in this case," and the Fourth Circuit affirmed. *Id., aff'd and remanded*, 577 F. App'x 224 (4th Cir. 2014). An employer's acceptance of an employee's premiums and failure to notify the employee of lapsed eligibility are not "discretionary functions with respect to the management, assets, or administration of a plan." Therefore, they are not acts taken in the capacity of an ERISA fiduciary. *Moon*, 577 F. App'x at 230–31.

5

The same reasoning is applicable here. Plaintiff alleges Omega accepted Svendsen's premiums without informing him of his potentially lapsed eligibility. In so doing, it did not act as a fiduciary under ERISA, and plaintiff has failed to state a breach of fiduciary duty claim. *See id.*

b. *State Law Claims*

The state law claims plaintiff asserts against Omega must also be dismissed as preempted by ERISA.

> ERISA's broadly-phrased preemption clause provides that ERISA's provisions "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." A state law "'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." In fact, "ERISA pre-empts any state law that refers to or has a connection with covered benefit plans . . . even if the law is not specifically designed to affect such plans, or the effect is only indirect." Of course, "some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." But, as long as the nexus between the state law and the employee benefit plan is not too tangential, "a state law of general application, with only an indirect effect on a pension plan, may nevertheless be considered to 'relate to' that plan for preemption purposes."

*Griggs v. E.I. DuPont De Nemours & Co.*, 237 F.3d 371, 377–78 (4th Cir. 2001) (cleaned up, internal citations omitted).

Plaintiff's state law claims 'relate to' the ERISA plan at issue. They all concern Omega's management of Svendsen's coverage under the plan, and they seek to recover the amount allegedly owed on the insurance policy. This is true whether or not Omega acted in a fiduciary capacity by accepting Svendsen's premiums without notifying him of potential lapsed eligibility. "Generally speaking, ERISA preempts state common law claims of fraudulent or negligent misrepresentation when the false representations concern the existence or extent of benefits under an employee benefit plan." *Griggs*, 237 F.3d at 378. "The state laws preempted by ERISA include common law causes of action such as breach of contract." *Hall v. Std. Ins. Co.*, 2005 U.S. Dist. LEXIS 1813, *5.

Accordingly, all claims asserted against defendant Omega are dismissed.

## II. LINA's Motion to Dismiss and Strike the Jury Demand

LINA moves to dismiss the North Carolina unfair and deceptive insurance practices claim asserted against it. Plaintiff concedes that ERISA preempts this claim despite ERISA's savings clause, which exempts state laws regulating insurance from preemption. 29 U.S.C. § 1144(b)(2)(A). While N.C.G.S. § 58-63-15 regulates insurance, its enforcement is limited to the Commissioner of Insurance. The enabling statute that provides a private right of action for persons in general is the Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75-1.1, which is ERISA-preempted. *Smith v. Jefferson Pilot Fin. Ins. Co.*, 367 F. Supp. 2d 839, 842–844 (M.D.N.C. 2005).

LINA also moved to strike plaintiff's jury demand. The only claim remaining in this case is the ERISA claim for wrongful denial of benefits under 29 U.S.C. § 1132(a)(1)(B), which is "equitable in character and thus a matter for a judge not a jury." *Phelps v. C.T. Enterprises, Inc.*, 394 F.3d 213, 222 (4th Cir. 2005) (holding that plaintiffs did not have the right to a jury trial). Accordingly, the motion is granted.

## CONCLUSION

For the foregoing reasons, the motions to dismiss [DE 16], [DE 18] are GRANTED. The ERISA claim against LINA will proceed, and the Court will entertain motions for summary judgment and any briefing attendant thereto.

SO ORDERED, this ___9___ day of December 2025.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

7